Good morning and may it please the court, Max Schulman on behalf of plaintiff appellant Rahim Edwards. The Prison Litigation Reform Act only requires exhaustion of remedies that a prison makes available, meaning practically capable of use to obtain relief. It does not require exhaustion of remedies that are unavailable. In this case, the record shows that my client, Rahim Edwards, exhausted all the remedies that were available under the circumstances to raise his complaints about defendant's unconstitutional assault, denial of medical care, and destruction of property. The district court committed multiple errors in granting summary judgment to defendants. I'd like to focus today on one issue that provides independent grounds to reverse and remand for trial, and that's that undisputed record evidence establishes that Edwards orally complained to jail authorities in the days following defendant's assault on April 19th, 2013. That's in Edwards' sworn deposition testimony starting at Joint Appendix 132. Defendants have never disputed that evidence. In fact, they've corroborated defendant's testimony that he spoke to internal affairs of the jail about the incident. Now, at a minimum, those oral complaints told the five-day deadline for Edwards to file a formal grievance under the jail's inmate handbook, whether or not this court also agrees with us that the complaints themselves satisfy the handbook's requirements in their own right. That tolling means that the five-day deadline had not run when authorities transferred Edwards out of the jail on April 26th without resolving his complaints. How do we know that it hadn't run? I mean, so what does it mean to resolve his complaints? You know, the odd thing about this is we say that a prisoner, you know, under the statute, a prisoner has to exhaust all administrative remedies that are available. Even if he gets a satisfactory remedy under the circumstances, if he wants to later sue for damages, he has to keep going throughout the whole course of appeals and complaints and so on, right? So what would he have been waiting for in order to file the actual grievance form, assuming that it was told? Well, your honor, I think there's, you know, there could... What's the thing that would have happened to let him know, okay, the prisoner has either resolved or failed to resolve his informal complaint and now he can move on to the grievance form? I think that if the jail authorities had responded to him and said, we've looked into this and we don't think you have a meritorious complaint, we're not going to discipline the officers or provide you any relief, that would have resolved the complaint, or if they had granted him relief, that would have been one thing. But here, I don't think this court... I mean, you know, the handwritten letter that he produces that says that he says was the grievance that he filed says, I want an investigation. So after he orally complained, if he orally complained on the 19th, the authorities did say, we're doing an investigation, right? So he actually did get the thing that he was going to request. Well, I... The thing that he requested in the oral complaint. I believe the evidence that specifies the date that he raised the oral complaint suggests that it was on April 22nd. That was first talking to Sergeant Crute and Barone, then Internal Affairs talked to him on the 24th. So I think for at least that two-day period of time, there was an atolling he needs to get past the five-day deadline. So when you read the oral complaint, what was he requesting? What resolution was he asking for that he would then be able to toll the deadline pending the resolution of that request? What was he requesting? Well, so there were a few different, you know, complaints he was raising. One was about the assault. You know, I think he was asking for that incident to be investigated, and presumably, you know, the relief that he's seeking in the lawsuit is not the same as what he was seeking in the jail, but I would think that he would have... It's not specified in the record exactly what he wanted, but he, I assume, wanted investigation, perhaps discipline of the officers. So when he made... Just make... So I'm making sure I understand the record. So when he made oral complaints to Sergeant Crute and Barone on April 22nd, we don't know specifically what he asked for? He asked for an investigation to be done and was told that investigation would be undertaken, and so then... And then he talked to the Internal Affairs people a few days later. That's right. Yes. Counsel, under our exhaustion law, the inmate's obligation is to raise the specific issue. So here we've got the three issues, excessive force, denial of medical care, and loss of property, but we don't... Our exhaustion law doesn't require the inmate to articulate the express relief, does it? As opposed to raising the issue in his grievance. So it's routine that an inmate grievance will say, I was denied medical care and complain of that without saying, and I would like $750,000, right? That's right, Your Honor. And I don't think the jail... There's no dispute that the jail would not have provided him the damages he's seeking. He simply had to exhaust the issue and then could proceed himself. I'm not talking about as a matter of the PLRA, he has to raise a resolution, but you're saying just under the procedures of the prison, if he makes an informal complaint, it will total the deadline pending a resolution of that informal complaint. So it's the procedures that say there's a resolution at issue. So I was asking, what is the resolution he asked for so he could know how long the tolling would have lasted? And you said that what he would be asking for is an investigation. But then you also said, they said, okay, we're investigating. And he knew that they were investigating because they did it and he was part of that investigation. So that means he got the thing he asked for, but if he wants to sue for damages under the PLRA, he still has to go through the whole process, right? He would still have to file the grievance form. I understand you have an argument that maybe he doesn't under the procedures, but you said for purposes of this argument, you said even if he did have to file that, he wouldn't have to. But I'm saying, well, why is that true? If in fact he got the resolution he asked for informally, but the PLRA requires him to do everything, including the grievance form, and he didn't do it even after he got the thing he asked for, why isn't that a lack of exhaustion? Well, yes, Your Honor. For purpose of this argument, I'm not asking the court to hold that he did fully exhaust the entire process. Certainly he didn't get a final grievance that he appealed. I'm simply suggesting that under this court's decision in Romano, it would be held legally unavailable because the time was still open for him to file the formal grievance when he was transferred and that cut off his ability to do so and rendered it a dead end. And that's what you meant when you said the tolling would go to the 24th at a minimum, and that's enough for your purposes. That's right, Your Honor. I think there may be more difficult questions in some cases about how long tolling would go, but this case, I think, presents some relatively straightforward facts. There was a very short window that Mr. Edwards had, and I think- When is the tolling on the 24th? What's that date? Is that when the report is issued, or when he's interviewed, or what happens on the 24th? That's when the internal affairs officers came to speak to Edwards, and so specifically to your question- But once he made the oral complaint and they said that they would investigate, why isn't that when he got the investigation? Your Honor, I think if the request is for investigation, I think that's best understood to suggest that he wants an investigation to be completed, not simply started. When was he transferred? He was transferred on April 26th. And the oral complaint you've just said, the incident is the 19th. We don't characterize it at this stage, but the 22nd is the first oral complaint, right? Yes, I should clarify- So let's- Well- Sorry. Let's assume that's an oral complaint, and setting aside the 24th, when we know there's an investigation, he still gets five days. The total time is five days, right? So if you do the tolling analysis, my question is, if he's transferred on the 27th, so his last date at which the mailbox is available is the 26th, potentially? Yes. He's got at least five days before the 26th, which goes back to the 21st. I'm just trying to figure out, even if the oral complaint is the last trigger on the 22nd, he still has- the tolling is still going to save him through the 27th, right? That's right, the 26th, Your Honor, when he was transferred. And to clarify- I'm sorry, you're saying the incident is April 19th? Yes, on the evening of the 19th. He makes the complaints on the 22nd? That's about the assault. He also has complaints about the medical care on additional days. We're talking about the oral complaint, the subject of this argument, that's the 22nd. Well, this is the argument just about the assault, though, right? Correct. There were also other oral complaints about the medical care on later days, but for purposes of the assault, yes, the 22nd. And the handbook says, if you make an informal request for resolution, the period in which you're seeking an informal resolution won't count against you, right? Correct. But that would mean that the 20th and the 21st would count, because he wasn't making an informal resolution on those dates, right? That's right, Your Honor. So then two days, maybe three, depending on what time it was on the 19th, two days have expired. So that means he has three days. So then, I mean, I don't know, it's cutting it close. If the investigation happens on the result, or he gets interviewed on the 24th, then two days later, it means he's not transferred until the day his deadline expires. But if it's three days, then maybe he planned to do it the following day. Is that the way the argument would work? Well, Your Honor, all I think this court needs to find is that there were at least two days worth of tolling in this case, because I don't think that the simple initiation of the investigation was the completion. Why is that? So I'm interested in that. So as we just said, I think he would agree that regardless of what the report said, if he wants to later sue for damages, he would have to file the grievance, right? Because we say you need to exhaust all available administrative remedies. So if a grievance process is available to you, even if you're satisfied with the result of the investigation, if you want to sue for damages, you have to use all available remedies, right? I believe that's right, Your Honor. Okay. So it doesn't actually matter what the report was going to say. He would have to do the grievance process regardless. So why is it the case that he's waiting for the report to be completed before he decides to file a form? Well, Your Honor, the handbook encourages inmates to use informal grievances, I think, because the jail wants these things to be resolved, especially excessive force complaints. Yeah, the jail doesn't want him to sue, right? The jail just wants him to be happy that they're doing an investigation and they're resolving it for their purposes, right? But he wants to sue. And the PLRA says, for you to sue, you have to do everything available. So it actually doesn't matter how the investigation turns out. You'd still have to do the grievance process. So it just seems weird that we would say, well, he was waiting to see how the report turned out before he filed agreements about the incident, but he'd have to do it anyway. Well, Your Honor, the handbook says that the time utilized in attempting to resolve the complaint informally will not be counted. I believe that fairly describes what is going on when he's collaborating with the investigation and waiting to hear back. I mean, isn't that true? I mean, I don't know. So why is it his request that he wants an investigation to occur? And when he knows that the prison has acceded to his request by doing an investigation, then he's gotten the resolution he wants. He's not the investigator. He's not the one doing the investigation. He's the one asking. He says, I want an investigation. And the prison says, OK, here it is. It seems like at that point, he's gotten the thing he's asking for, right? Your Honor, I would disagree. But I think in the alternative, at the very least, Mr. Edwards also has complaints that arose less than five days before the transfer, such as the denial of medical care on April 22nd and thereafter, and the destruction of property that he only discovered upon his transfer. So I think for those, there's no question. He only discovered it upon his transfer. But then he produces this letter that's dated April 20th where he talks about the property that wasn't in his inventory, right? So he didn't discover it on the 26th. He must have discovered it before the 20th. Because if this letter is real, which he claims it is, then he's talking about that very claim on the 20th. Yes, Your Honor. I believe the letter is consistent with his testimony. At J54, it says, I have yet to personally see my property. He was transferred to a different cell after the assault. And so he recounts in his testimony that his testimony was not moved to his new cell. He inquired about it. And then upon his transfer, he was told that it had been destroyed. So I think that's consistent with his account, and that the district court was wrong to have scouted. When do we say when he can make a grievance? Is it when he asks an officer, is my property there? And the officer tells him, no, it's not included in your property inventory? Or days later when he confirms that with the document? I mean, wouldn't we normally say he knows about the problem when he's informed of it by a prison officer? Well, to the extent that the court would view the record that way, Mr. Edwards did raise oral complaints about it, that that's in the record as well in his testimony. But I think in this case, this court need not resolve that. Because at the minimum, that suggests that there's a dispute of fact about when the time began to run, and that this was not appropriate for summary judgment. So I don't think this court needs to- So what is the dispute of fact? So if we were to remand it for further fact development, what are the facts that would need to be discovered? So our frontline position is that this court doesn't need to do that. This court can decide it as a matter of law. Most of these are legal questions about what the handbook requires and whether something is available or unavailable, right? But you just referred to disputed facts. So what are the disputed facts? Well, so for example, the authenticity of the letter, we don't believe this court needs to reach that. But that is a classic fact question that, you know- But the district court did resolve that fact question, right? The district court says, I don't believe it was filed, right? Yes, Your Honor, we believe that was erroneous because this was at summary judgment. And that should not have been decided. And your argument is that there would need to be a hearing if the district court is going to resolve that question in order to determine exhaustion, if it's important enough to be resolved. If it's necessary to resolve it, what should the district court do? Yes, we believe at a minimum there should be a hearing under this court's decision in Mesa. For example, this court's decision in Garcia versus Heath remands for an evidentiary hearing. Now, we also think that this is an issue that implicates the jury trial, right? And should go to trial. But at the very least, it shouldn't have been resolved. In Garcia versus Heath, there was no determination about whether he had filed it. Or we think that- Actually, we thought the determination was erroneous or premature and needed a further investigation. But here, the district court has a basis for deciding that he thinks that the letter wasn't filed, which is, he says, you testified inconsistently about it. You said it was multiple grievances. Then it was one grievance. And you mixed up the dates all the time. And I just don't find it as credible as the prison's testimony. That's a basis. So I agree with you that maybe it shouldn't be resolved on summary judgment. But if we remand it, we agree that that's a fact question that the court can decide. Or at least, I understand, maybe you'll contest that. But it seems like our precedents say that it's a fact question the court can decide. And so wouldn't the district court just do the same thing, just instead of calling it summary judgment, calling it evidentiary hearing? Well, Your Honor, I do believe Garcia says that the district court must conduct a hearing. Well, under those circumstances, we thought it needed to do so. But I don't know if that means that a rule for all time is that there needs to be a hearing, right? Well, I think that's consistent with summary judgment is even outside of this context, it's just not appropriate for resolving- So it's got to depend on the strength of the evidence, doesn't it, right? If he says he filed this on April 20th, but there's a surveillance camera that captures all of his activity on the 20th, and we can see him sitting in his cell and not filing a grievance, the fact that he claimed he did, I don't think would defeat summary judgment, would it? I think that's right, Your Honor. Okay, so it depends on the strength of the evidence, right? Whether there needs to be a further hearing. That's right. And we think there's a genuine dispute of material fact here that the question of authenticity or credibility based on his credibility is a classic fact question that the court can put him on the stand and assess his credibility against defendant's witnesses. That's the exact sort of thing- I think the district court could do that, and if it had, I'm not sure we would say that that was an abuse of discretion, but why can't the district court say even on the sworn testimony that he has in writing, or I guess it was a live deposition, so like there was sworn testimony taken, why can't he say I've reviewed the sworn testimony and because of the inconsistencies in the testimony, I don't find it credible? I understand there might be some cases where it all comes down to like looking somebody in the eye and determining whether the person is credible, but like if somebody just has a wildly inconsistent story, you don't have to do that because you can look at the nature of the testimony up front. Your Honor, even if it's possible in another case that that could have been done, we think it wasn't appropriate in this case in particular because defendants didn't raise any of these objections, so this was not something the court should have raised sua sponte below, even leaving aside the question. I'm sorry, the government didn't raise which objections? The authenticity objection is something that the government did not argue that the letter was not actually submitted. They argued that the letter- Is that the whole point? They said we have records of all grievances that were filed and we don't think this was filed. That's their whole claim, right? No, Your Honor. I believe if you read the defendant's briefing below, their argument is that Mr. Edwards did not strictly or properly comply with the grievance policy, meaning that he did not file the requisite form. I don't think it's a question- Well, they say both, don't they? That he didn't file a grievance because they don't have a record of it and even if he did file this letter, you're saying you don't think they made the first argument? Correct. The court, I believe, raised it sua sponte, which is not a proper use of the court's discretion. Can I ask also about the unavailability thing? So I get your point that, let's say he did get a tolling of the deadline and maybe he still had a day or two after the transfer to file a formal grievance. Isn't it clear on the- I mean, but he doesn't say, you know, I thought because I had done something informal, I had more time to file a grievance form and so therefore I was waiting to do it and then all of a sudden I was transferred. Actually, his arguments are, I thought I did everything I needed to do. I think that the letter was enough and that was a grievance, right? Isn't it kind of odd to say that his filing of the grievance was interrupted when it's clear from the record that he had no intention of filing the form? Your Honor, I believe he has alternative arguments at J195 in his Office of Summary Judgment. He says, I orally complained as the handbook entitles me to do. You know, I think he was trying in good faith to comply and I believe he didn't use the word tolling when he's representing himself pro se, but I think that's a fair understanding. Is there anything in the record where he says, I was going to file the form? No, Your Honor, but I don't think that's required under the Romano decision that the district court did not cite and that I don't think defendants can distinguish if he had time to do so, but it was cut off when he was transferred not only to a different facility, but a different system altogether out of the county jail to a state prison. Well, it's not the kind of evidence we have here. Like the evidence here is his deposition testimony that he wrote this letter and he thought that that discharged his obligation under the grievance procedures. If that's wrong, it means he didn't exhaust, right? I think he made alternative arguments, Your Honor, that he pointed to both the oral reporting that he's pointed out that the handbook allows it, especially for excessive force complaints. That's another section of the handbook. But the idea that the handbook allows it, that is an argument that I think I discharged my obligation under the handbook. It's not, I thought there was an extension of time and I was going to file the grievance form later. Well, Your Honor, he did argue, I believe, both. If you look at his summary judgment papers, he does argue unavailability in addition to saying, I submitted this letter. He argues that remedies were unavailable. He cites this court's decision in Williams. In his objections to the magistrate report, he cites the decision in Romano. So I think a fair reading, especially given the special solicitor to pro se litigants of what he's arguing is both alternative arguments, which we're pressing here. But those are two different versions of the facts, right? So you're saying he's saying, I submitted a letter or made an oral complaint and that's all I needed to do. That was sufficient to exhaust my administrative remedies. In the alternative, I intended to submit a form because I understood I had to do something else. Like, you know, those two things are contradictory. They can't both exist, right? So we're talking about a version of the facts. Your Honor, I don't believe he testified that he intended to submit a form and I don't believe that he's required to. I don't think in Romano, this court was assessing whether the- So let's say he believed that he didn't need to file a form. He thought that the handwritten letter was enough or the oral complaint was enough. If he had not been transferred and the deadline expired, we could say, all right, you failed to exhaust because you never filed the form. But the fact that he was transferred with like a day left to file the form, then means now he can bring a lawsuit that otherwise would be barred. Yes, Your Honor. And I believe, you know, for some of these complaints, which have to be assessed claim by claim under Supreme Court decision in Jones v. Bach, there's more than one day remaining. But I do believe that that's the principle of this court's decision in Romano. And I think that's consistent with other decisions, such as the Hayes decision of this court that says when a plaintiff, you know, filed all his appeals, but- Do you think Romano would have come out the same? I understand you're saying that this is not equivalent to your case, but just hypothetically, if in Romano, the prisoner had, you know, said in deposition testimony, yeah, I had time remaining to file a grievance form, but I was never going to do that. Would the results have been the same? Yes, Your Honor. I believe, you know, the remedies are decided by the prison. It's not up to this court to articulate a common law of what are reasonable exhaustion requirements. If the remedy was available and then was cut off by the jail, I believe that that's what matters for the PLA purposes here. And so I don't think it's a subjective matter that the plaintiff could have changed his mind if he had more time. Perhaps the jail would have informed him that he needed to do something else and he would have done it. Okay, that's fair enough. I mean, also in Romano, there's some emphasis on the idea that he didn't have advanced notice of the transfer. Do we know whether your client had notice of the plan, of the intended transfer? I don't think there's anything in the record either way. And, you know, we believe- Does that matter? I mean, is that a fact question that maybe the district court should address? I don't think the court needs to address it. I don't think it was dispositive in Romano, but to the extent that defendants haven't reduced evidence, failure to exhaust is an affirmative defense on which they bear the burden to establish that there were available remedies. Yeah, but the district court thought they had met the burden. So I don't know if the county would have known they needed to submit something else. But does the- So is your- Do you think that whether he had notice of the transfer or not matters? I don't think it does matter, Your Honor. So if he knew that he was being transferred by a certain date, that wouldn't make a difference? I think that's right, Your Honor. It's up to the prison to decide, you know, how many days he has. If they cut it off, even if he knows that it's going to be cut off, you know, I think if you read the Romano decision, the way it describes its holding, I believe it reaches the holding and says that the transfer cut off the remedies. Then it goes on to also discuss the notice question, which arose in a prior stage of that litigation. And it suggests that there, the lack of notice supports that holding. But I don't think it says it's necessary. Also in Romano, the prisoner was unable after transfer to continue to pursue remedies. Does it make a difference here that the record is not as clear on that point? Your Honor, again, we don't think it makes a difference here. I think certainly defendants haven't pointed to anything and there's nothing in the handbook that suggests that remedies could be pursued after you're transferred to state prison. You know, I think if you read the handbook, the way it says you file a grievance is you drop it in the grievance box. That's clearly not something that you could do from a state prison. So I think that just on the face of it, there's clearly nothing he could have done. But just to making sure, again, that I understand the record. In Romano, it was clear that you couldn't continue to pursue. Here, it might be incredibly difficult and maybe you couldn't continue to pursue. But it's not as clear that he couldn't, even from another facility, have found someone to put that form inside a grievance box on his behalf. I think that's fair. If that was what is required. Yes, Your Honor, I think that's fair. But to the extent that this court finds that unclear, I think that just leads to our alternative argument about opacity. This court's decision in Williams similarly held that even if it was technically possible to file a grievance after transfer, it was at least not clear how the plaintiff could have done so. So I think that to the extent that the handbook just simply doesn't address that, that's another ground on which this court can hold that the remedy was legally unavailable after he was transferred. Unless, you know, there's some procedure at the prison that he was transferred to. Is it possible there's some way, if you just said to an officer, I don't want to file a grievance, I still have time left, but you're transferring me. But we don't actually know whether there is, maybe there's an obvious answer that say, well, you could mail it or something. Do we know that? I don't think we know definitively, Your Honor, but certainly defendants haven't pointed to any evidence of that. And I think, you know, just these are different systems, the county jail and the state prison. I think there are previous decisions of this court that discuss, you know, transfers between different systems and suggest that transfers are denied after transfer grievances are denied, such as in Romano, I believe, it's discussed he's in a different facility where he was not allowed to file a grievance. So I don't think there's any basis in the record that I know of to say that he could have filed it after the transfer. Can I just ask a back question? So the handwritten letter that he produces, was he producing the original of it or he makes copies in the prison? How does he have the original that he says he put in the box? Your Honor, I don't think it's specifically stated in the record, but I would presume that he made a copy of it. He submitted it to defendants in discovery in 2014. So I would assume that he made a copy and kept it at least till that time. Thank you, Your Honor. We'd ask that this court reverse and remand for trial. Thank you. And we appreciate your willingness to step up and help work with this argument. Thank you. Thank you, counsel.